Good morning, Your Honors. May it please the Court, Christy Hughes from Federal Defenders on behalf of Mr. Sanchez. Mr. Sanchez is entitled to resentencing because the District Court imposed a vindictive sentence. After this Court undercut the District Court's rationale for the original 70-month sentence, the District Court engaged in a pattern of acting ex parte, not disclosing its ex parte actions to the parties, and then surprising Mr. Sanchez with those acts in court. Could you please keep your voice up a little bit? I'm having difficulty hearing you. Sure, I apologize, Your Honor. The District Court first tried to manufacture a new basis to justify imposing the 70-month sentence that it wanted to impose. So it asked the prosecutor for the DEA 7 without ever telling Mr. Sanchez that it asked for the DEA 7. It then sprung that DEA 7 on him at the resentencing hearing after getting defense counsel to agree that this was an open remand. Was there anything inaccurate or bad about the DEA 7? Did it misrepresent the amount of narcotics involved? It didn't, Your Honor, and we're not challenging the DEA 7 itself. I'm sorry, am I loud enough? We're not challenging the DEA 7 itself. We're challenging the District Court's procedure in asking for that DEA 7. So asking the prosecutor for the DEA 7 without ever telling Mr. Sanchez that he had asked for it, and then springing it on him at the sentencing hearing without giving Mr. Sanchez time to object or discuss anything about it is what we're challenging. It's that the procedure the District Court followed evidences his motivation to punish Mr. Sanchez for his successful appeal. And then after Mr. Sanchez challenged the sentence, the District Court contacted the government's own agent, Ex Parte, and asked the chemist about the DEA 7 lab report, and again, never disclosed that conversation to the parties. Can I ask this question? Do you know whether there is a test to evaluate judicial vindictiveness in the context of sentencing? There is a test for prosecutorial vindictiveness, but do you know of one for evaluating judicial conduct? I haven't found one, Your Honor, and so because, as the government even notes in its brief, the District Court is rarely going to admit that it's being vindictive, we are looking at the District Court's actions here to show what its motivation was. And so it's that telling the parties about the acts, never intending to tell the parties about the Ex Parte acts, and then sort of surprising them at the hearing that shows that the District Court's motivation was to make sure that Mr. Sanchez did not see a benefit from his appeal. I apologize. No, that's all right. It wasn't on. Oh, okay. All right. Anything you want me to repeat that... There was some mention by Judge Burns that the use of the DEA-7 was in general used by judges when they were sentencing drug offenders. It is unusual that he should call up on a condition and produce a document without having consulted with opposing counsel. But how were you prejudiced? Well, it's not necessarily a question... Now I feel like it's too loud. It's not necessarily a question of prejudice, Your Honor. We agree that the DEA-7 says what it says, and that's what defense counsel said at the hearing. Our objection... Not that it just says what it says. All documents say what they say. Correct. But it says it accurately. So we have a document which is procured in an informal manner, which blurts out the truth. Well, I think that characterization is a little bit inaccurate. It's not an informal manner. It's a secretive manner. And that's... All right. It's a secretive manner. Well, and so the fact that the District Court undertook this improper secretive action is evidence that its motivation was to make sure that Mr. Sanchez was punished for his successful appeal. Or you could say the motivation was to make sure that the District Court had the evidence, had the goods on Mr. Sanchez. Well, if that was the District Court's only intention was to make sure it had the evidence, there was a proper way to go about this. It could have asked the prosecutor or the probation officer to make the DEA-7 a part of the record, given Mr. Sanchez notice of it, asked him if he objected to it, and then gone about with the sentencing hearing and the guideline calculation. It would have been much preferable. Correct. But is that enough to show that this should be subject to a resentencing and to a different judge? Well, that's not all we have here, Your Honor. We also have the ex parte communication with the chemist once Mr. Sanchez challenged the sentence. And so, again, the District Court contacted the chemist, apparently on a Thursday before the Monday Rule 35 hearing, talked to her about the DEA-7, never told any of the parties about this, and it appears never intended to disclose it. In answer to Judge Rogers' question, is an element of advocacy sufficient to show vindictiveness when a judge advocates or goes out and collects evidence? Is that sufficient to show vindictiveness? Well, I would say that contacting the chemist isn't just an act of advocacy. It's an improper – I mean, even the government agrees that the District Court should not have done this. They call it regrettable. But it wasn't proper. A District Court is not supposed to have an ex parte conversation with a law enforcement witness about a pending case and then let that conversation affect its sentencing determination. And again, it never intended to disclose this conversation. It acted at the hearing as if it hadn't spoken to the chemist. It says to her, and this is at ER 181, this is a lab report that I think was brought to your attention last week. Are you familiar with the lab report? The District Court should have said, I discussed this with you last week, correct? And then gone about – it acts like it's not sure whether or not the chemist is aware of this lab report. And it's covering up the fact that it has spoken to the chemist. And the fact that this ex parte communication occurred only came out on cross-examination. The District Court never intended to tell the parties about this. And so it's the act of advocacy in asking for the DEA-7, again, in secret, springing it on Mr. Sanchez at the sentencing hearing, and then contacting the chemist ex parte, not notifying anyone, springing it on the parties again. And then the advocacy in calling the chemist as its own witness, questioning her at the hearing for seven or eight pages of transcript. The government never asked a single question of that witness. So it's all of those factors combined that show that the District Court was trying to protect Mr. Sanchez from seeing a benefit from his appeal. So your client, I take it, understands that given the guideline calculations, if this is remanded and sent to a new judge, that he could get a higher sentence? He could, Your Honor. But there's also – we've also raised the minor role issue. And so I know that another panel of this Court is going to address the minor role guidelines and the application of it. But a different District Court judge may think that perhaps the minor role determination came out the wrong way. That results in a huge swing in the guideline calculation. And so he may not actually end up with a higher sentence. Unless the Court has further questions, I'll reserve the remainder of my time. Pardon? Given the fact that there was some indication that this wasn't the first trip that your client had with drugs, are you betting a little risky on the minor role? I don't think so. He was still a courier. He was being paid a small amount in relation to the large amount of the drugs. There were a number of other people involved here. And the government, in fact, listed those for the District Court. There was a spotter who was watching him cross the border. Someone else loaded the drugs. The level of trust the organization placed in him was low. He had a GPS tracker on his car. Good morning. May it please the Court. Stacey Sullivan on behalf of the United States. I want to start by clarifying some facts from the record that I believe are not accurately understood at this point. The Court stated and Defense Counsel agreed that it was unusual to call up the technician to produce the lab report on the Thursday prior to the sentencing. That did not happen. The phone call was made to me as the Assistant United States Attorney on the Friday evening before the Monday sentencing. It was not made by the Court, by the judge himself. How can we consider that if that's not in the record? Well, I just want to clarify because it's Well, but how would that be properly before us in any event? That is, we have in front of us the transcript from that hearing. And if you're suggesting that we are supposed to take into account evidence that was not submitted to this panel, I don't exactly know procedurally how we're supposed to do that. No. I am not asking this Court to take into account evidence that's not in the record. A statement was made from this bench and Defense Counsel at this very argument that the lab technician was called by the Court to obtain the DEA-7 on the Thursday night before the hearing. That did not happen. What did happen? On Friday evening, the judge's clerk contacted me when I was working late and asked if I had a copy of the DEA-7. I did and I emailed it over to Chambers. Where do we get the impression that the judge called the lab technician on Thursday? The judge called the lab technician on Thursday, the week after the sentencing, prior to the Rule 35 evidentiary hearing, which was set. The communication with the lab technician by the judge did not happen until after the defendant was sentenced the second time. The alleged ex-party communication, which the defense points to as evidence of vindictiveness, didn't even occur until after the actual, quote, vindictive sentence had occurred. So the defense is asking you... When did the judge call the technician after the second sentence was already entered? At the second sentence, after the sentence that's being challenged on this appeal, at that sentencing hearing, the court clarified with defense counsel that defense counsel did not dispute the accuracy of the DEA-7. It was not until the Rule 35 motion that the accuracy of the DEA-7 was challenged by the defense. I believe, I'm speculating here, I can only speculate as to what was in the district court's mind, but in that written Rule 35 motion, certain challenges were made to the chemistry, the accuracy of that lab report. And I can only speculate the judge read that motion and thought, well, I'll just call the chemist and ask her. Which of the two hearings did the district court indicate that it didn't matter what the Ninth Circuit said, the most that this defendant was going to get from him was a 70-month sentence period? I believe it was the second hearing. I also want to clarify an aspect of the appellant's argument. Did you answer Judge Rogers' question? Yes, the second hearing. Second hearing. Yes. Where it was stated by the appellant that it would be normal procedure to make the DEA-7 part of the record at the sentencing hearing. I've been in AUSA for 12 years. We've never made the DEA-7 part of the record. It's something that's informally exchanged between the parties prior to the court's sentencing hearing. When I read the record, I was under the impression that the process of requiring that the district judges had it was a brand new process there in the Southern District of California. Yes. And in fact, it's not a formal requirement that the judges actually have the DEA-7. It's a requirement that both parties have seen the DEA-7 and looked at the results from the DEA lab. This was something that had recently come in effect prior to the second sentencing hearing. In your experience, you've said you've been practicing 15 years. Have you ever had a district court judge refuse a continuance so that a defense attorney could properly prepare to on an issue that was critical to the sentencing before the court? Not in my recollection. I will note that it was the appellant's motion or the defendant's motion to the Rule 35 hearing that was being held. It was an evidentiary hearing set for that date. And the court did have witnesses ready for the legal proposition and factual proposition that this report was not accurate. And there were none. And that's when the court said, let's call the chemist. You had no interest yourself in calling the chemist? No, I did not. If it would please the court, I would go back to, in this case, the court has brought up the question of, is there a legal standard for judicial vindictiveness, similar to a prosecutorial type of vindictiveness? I agree with counsel for the appellant that there is no black letter written out legal standard for judicial vindictiveness. And I believe that's why we have the presumption of vindictiveness that arises in the case law when you have a certain set of facts. And that is, a higher sentence is imposed at the time of the second sentence on the remand. In this case, we do not have that. And we have law saying that it is the court's obligation, the district court's obligation to correct any type of truth, if you will, of the actual purity of the methamphetamine. It is an objective basis under the guidelines that the amount of actually pure methamphetamine in this case raise the guideline level in this defendant's sentence. Right, but what is odd is that you as the prosecutor did nothing to put that forward to the district court. That the district court itself, after having said that there is no way that he was going to change his sentence, decided to figure out a way to make the sentence legal, so to speak. Yes, I think that the facts there have, I point to the very recent change in the policy in the district court of not being able, the judges having been instructed by the chief judge not to move forward on a sentencing with the lab report. That had been so recent, it hadn't even occurred to me until the court clerk for Judge Burns called and asked for a copy of the DEA-7. Unless the court has any specific questions, United States Refs. Do you wish to rebut? I'd first like to answer Judge Rogers' question, I believe. The district court said at both the first and second hearings that it wouldn't impose anything but a 70-month sentence. At ER 101-02, which is the first hearing, it said it would only impose a 70-month sentence regardless of the guideline range, regardless of really anything. Then at the second hearing at ER 193, 197-98, 204, and 219, it repeatedly said that the best Mr. Sanchez was going to do in front of this district court was a 70-month sentence. Regarding the policy, the district court did mention the quote-unquote policy. This wasn't a formal policy in the district, and the policy was for the prosecutor to provide, as the district court explained the policy, because it's not reduced to a general order. The prosecutor was supposed to provide the DEA-7 to the district court, and if that wasn't done by sentencing, the district court was supposed to continue the sentencing hearing until it had the DEA-7 and the parties had seen it. That wasn't what the district court did here. The district court was not actually following the policy. Two more points of clarification, Your Honor. I understand that the government is focusing on who called Ms. Sullivan and asked for the lab report. Our objection is that Ms. Sullivan isn't, whether or not it was the court in-deputy or a clerk, our objection is that that was done on a Friday night without ever telling Mr. Sanchez that this was going to be an issue with the sentencing. The only way Mr. Sanchez found out about this is because Ms. Sullivan happened to email defense counsel 45 minutes before the sentencing hearing and say, oh, by the way, Judge Burns' clerk asked me for this. Absent that, Mr. Sanchez's counsel would have walked into sentencing without ever knowing that the DEA-7 was even going to be an issue, and I think that was the district court's intent, was to surprise him with it. Given the way the district court asked defense counsel this is an open remand, defense counsel said yes, and then the district court said, well, in light of that, I've been provided with the DEA-7 and that's going to raise your guideline range four levels, at least. And the final point, Your Honor, is that yes, the ex-party conversation with the chemist did occur after the original resentencing hearing, and so, again, we're not arguing that we were prejudiced by that or that it affected the imposition of the original sentence. We're arguing that all of these factors taken together show the lengths that the district court was willing to go to. This court should consider why the district court was taking these improper actions if it was really just trying to get the guideline range correct. These improper actions are evidence that the district court was trying to prevent Mr. Sanchez from seeing a benefit from his appeal. Thank you very much. The case of U.S. v. Sanchez-Carrillo will be submitted, and we'll go to the next case on the calendar.
judges: Fernandez, Bea, Rogers